

The Money Source Inc.
500 S. Broad St., Suite 100A, Meriden, CT 06450
Phone: 866-867-0330 Fax: 203-285-8452

## Varying ACH Recurring Payment Authorization Form

Please mail the original completed authorization form to the address listed above. Questions? Please contact Customer Care at 866-867-0330.

### How do recurring payments work?

You authorize regularly scheduled charges to your checking or savings account. The authorized account will be charged the amount indicated on your mortgage loan Note plus any taxes and insurance incurred during the billing period. You authorize us to change the amount of your payment or reconcile as needed if there is an increase or decrease in the payment amount due to changes in the interest rate, escrow, or for any other permissible reason. The charge will be reflected on your monthly billing statement and will appear on your bank statement as an "ACH Debit." You agree that no prior notification will be provided unless the date or amount changes, in which case you will receive notice from us at least 10 days prior to the payment being collected.

**Instructions:**

- Complete, sign and return the original form below. **Please note:** you do not need to put your monthly payment amount on thisform.
- Attach a voided check for ACH payments from a checking account or a savings deposit slip for ACH payments from a savings account.

### What else do I need to know?

Requests for changes or cancellations must be made at least 5 business days before the scheduled payment date. Automatic payments may be cancelled if they are returned, if loan falls into a delinquent status, or if you, a co-borrower, or anyone listed on the title of the property that secures the loan files for bankruptcy. If this occurs, contact us for instructions for making payments on your loan. We may change the terms regarding automatic payments at any time and will provide any required notice to you in writing.

### What do I need to do?

For payments from a checking account, please attach a voided check. For payments from a savings account, please provide a deposit slip showing the account number and bank phone number.

The ACH Recurring Payment Authorization Form must reach our office at least 10 days prior to the loan due date. Authorizations received less than 10 days prior to the loan due date will not be set-up until the next payment due date. **You will receive a confirmation letter once your automatic payment has been set-up. It can take up to 30 days for ACH withdrawals to start. If a payment is due during this 30-day period, payment will need to be made by alternative means such as mailing a check, paying online, or over the phone.** It is important that you continue to send your monthly mortgage payment until the confirmation is received.

Please complete the information: Loan #____________ Name on mortgage acct ____________
Starting on, ______ , I ____________ authorize us to charge the bank account indicated below on
(Date) (full name)

1st 2nd 3rd 4th 5th 6th 7th 8th 9th 10th 11th 12th 13th 14th 15th

the ______ of each month for payment of the mortgage loan. Select a date from 1st-15th (numeric day)

| Account Type: | Checking | Savings |
|---|---|---|
| Name on Acct. | | |
| Bank Name | ☐ | ☐ |
| Account Number | | |
| Bank Routing # | | |
| Bank City/State | | |

Routing Number Account Number
FOR
222222222 000111555 1027

I approve an ADDITIONAL PRINCIPAL amount of $________ to be withdrawn each month
(enter $0 if no additional amount is requested)

BANK ACCOUNT HOLDER'S SIGNATURE [signature] DATE 11/27/21

By signing above, you authorize us to electronically withdraw monthly payments plus any additional principal you authorize from the bank account provided on the date specified, or on the next business day if that date falls on a non-banking day. You understand that this authorization will remain in effect until you request a stop payment by notifying us, orally or in writing, at least 5 business days before the scheduled payment date, using the contact phone number or address listed above. We may require you to submit written confirmation of the stop payment order within 14 days of any oral notification and will notify you if that is the case at the time of oral cancellation. Oral stop payment orders cease to be binding after 14 days if required written confirmation is not provided. You understand that because this is an electronic transaction, the funds may be withdrawn from your account on or after the noted transaction dates. If an ACH transaction is rejected for Non-Sufficient Funds (NSF), we may, at our discretion, attempt to process the charge again within 30 days. You agree to an additional charge for each attempt returned NSF, which will be initiated as a separate transaction from the authorized recurring payment. You further authorize us to initiate electronic transactions that may be necessary to reconcile errors related to electronic transactions. By signing above, you acknowledge you have read this agreement and agree to its terms and will keep a copy for your records.

Loan No.: 

# Borrower and Notary Checklist

Please carry this sheet with you when you have your documents notarized. This checklist is being provided to ensure that your loss mitigation documents are correctly executed. If any of the following steps are not completed, or are completed incorrectly, the documents will be returned to you for correction and/or completion.

- Borrower(s) must sign their name(s) exactly as the printed line below the signature line.
- County, State and date information completed (if applicable) on Borrower's Acknowledgment for each set of documents.
- Notarization date written in by Notary Public when notarizing Borrower's Acknowledgment for each set of documents.
- Notary Public's signature and title written in by Notary Public when notarizing Borrower's Acknowledgment for each set of documents
- Notary Public's stamp and/or seal placed on Borrower's Acknowledgment when notarizing each set of documents.
- Commission Expiration Date of Notary Public written in on Borrower's Acknowledgment for each set of documents, if required.
- ****DO NOT HAVE DOCUMENTS NOTARIZED BY A FAMILY MEMBER OR A FOREIGN NOTARY****

- **Witness Signatures**

Certain states require witness(es) to your signature. If witness signatures are required on your loan documents, please verify that each witness has signed and printed/typed their name under the signature as indicated. ****BORROWERS CANNOT WITNESS THEIR OWN SIGNATURES. ****

****WITNESS SIGNATURES MUST BE FROM NON-RELATED, DISINTERESTED THIRD PARTIES.****

**NOTE:** The Lender's Acknowledgment portion of the **loan documents** will be completed by the Lender and **SHOULD NOT** be notarized by your notary public.

**After Recording Return To:**
RUTH RUHL, P.C.
Attn: Recording Department
12700 Park Central Drive, Suite 850
Dallas, Texas 75251

**Prepared By:**
RUTH RUHL, P.C.
12700 Park Central Drive, Suite 850
Dallas, TX 75251
877-766-6677

Parcel ID No.: 41-01-08-0-101

[Space Above This Line For Recording Data]

Loan No.: [redacted]
Investor L[redacted]

FHA Case No.: [redacted]

# LOAN MODIFICATION AGREEMENT

**(Providing for Fixed Interest Rate)**

This Loan Modification Agreement ("Agreement"), made this 29th day of October, 2021, between KAREN L. FALENSKI, AN UNMARRIED WOMAN, whose address is 633 OVERHEAD BRIDGE, YOUNGWOOD, Pennsylvania 15697 ("Borrower") and The Money Source Inc., whose address is 500 South Broad Street, Suite 100A, Meriden, Connecticut 06450 ("Lender"), amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated June 24th, 2009, recorded July 6th, 2009, and recorded in Book/Liber N/A, Page N/A, Instrument No. 200907060026301, of the Official Records of WESTMORELAND County, Pennsylvania, and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property," located at 633 OVERHEAD BRIDGE RD, YOUNGWOOD, Pennsylvania 15697,

Said Security Instrument was assigned as follows:

From Mortgage Electronic Registration Systems, Inc., as nominee for Pennsylvania Equity Resources, Inc., to First Guaranty Mortgage Corporation, by assignment dated January 17th, 2012, and recorded on March 6th, 2012 of the Official Records of WESTMORELAND County, State of Pennsylvania in Book/Liber N/A, Page N/A, Instrument No. 201203060009211.

Original Loan Amount: $130,494.00

Loan No.: [redacted]

From N/A, to N/A by assignment dated N/A, and recorded on N/A of the Official Records of WESTMORELAND County, State of Pennsylvania in Liber or Book N/A, Page N/A, Instrument No. N/A.

From N/A, to N/A, by assignment dated N/A, and recorded on N/A of the Official Records of WESTMORELAND County, State of Pennsylvania in Liber or Book N/A, Page N/A, Instrument No. N/A.

the real property described being set forth as follows:
SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.
SEE EXHIBIT "B" ATTACHED HERETO AND MADE A PART HEREOF.

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. As of January 1st, 2022, the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. $128,297.95, consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

2. Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of 3.250%, from December 1st, 2021. Borrower promises to make monthly payments of principal and interest of U.S. $558.36, beginning on the 1st day of January, 2022, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. The yearly rate of 3.250% will remain in effect until principal and interest are paid in full. If on December 1st, 2051, (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

3. If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument,

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

4. Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, the Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the specified date in paragraph No. 1 above:

Loan No.: [redacted]

(a) all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note; and

(b) all terms and provisions of any adjustable rate rider, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

5. Borrower understands and agrees that:

(a) All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

(b) All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

(c) Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(d) All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

(e) Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

(f) Borrower authorizes Lender, and Lender's successors and assigns, to share Borrower information including, but not limited to (i) name, address, and telephone number, (ii) Social Security Number, (iii) credit score, (iv) income, (v) payment history, (vi) account balances and activity, including information about any modification or foreclosure relief programs, with Third Parties that can assist Lender and Borrower in obtaining a foreclosure prevention alternative, or otherwise provide support services related to Borrower's loan. For purposes of this section, Third Parties include a counseling agency, state or local Housing Finance Agency or similar entity, any insurer, guarantor, or servicer that insures, guarantees, or services Borrower's loan or any other mortgage loan secured by the Property on which Borrower is obligated, or to any companies that perform support services to them in connection with Borrower's loan.

Borrower consents to being contacted by Lender or Third Parties concerning mortgage assistance relating to Borrower's loan including the trial period plan to modify Borrower's loan, at any telephone number, including mobile telephone number, or email address Borrower has provided to Lender or Third Parties.

By checking this box, Borrower also consents to being contacted by text messaging ○.

6. If applicable, by this paragraph, Lender is notifying Borrower that any prior waiver by Lender of Borrower's obligations to pay to Lender Funds for any or all Escrow Items is hereby revoked, and Borrower has been advised of the amount needed to fully fund the Escrow Items.

7. Borrower will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay

directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and Borrower shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this paragraph.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender and Borrower can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund Borrower any Funds held by Lender.

# STOP!!!
# PLEASE MAKE SURE THE BELOW ACKNOWLEDGMENT IS CORRECTLY COMPLETED.

**BORROWER ACKNOWLEDGMENT**

State of **New Mexico** §
§
County of **Bernalillo** §

On this **1st** day of **October**, **2020**, before me, **John Smith** *[name of notary]*, a Notary Public in and for said state, personally appeared John Doe and Jane Doe

*[name of person acknowledged]*, known to me to be the person who executed the within instrument, and acknowledged to me that he/she/they executed the same for the purpose therein stated.

(Seal)

*[Place Seal Here]*

John Smith
Notary Signature

**John Smith**
Type or Print Name of Notary

Notary Public, State of **New Mexico**

My Commission Expires: **01/01/2022**

Loan No.: [redacted]

| | |
|---|---|
| 11/27/21 <br> Date | Karen L. Falenski (Seal) <br> KAREN L. FALENSKI –Borrower |
| Date | (Seal) <br> –Borrower |
| Date | (Seal) <br> –Borrower |
| Date | (Seal) <br> –Borrower |

## BORROWER ACKNOWLEDGMENT

State of PA §
County of Westmoreland §

On this, the 27 day of NOVEMBER, 2021, before me MARION RAYMAN, the undersigned officer, personally appeared KAREN L. FALENSKI

known to me (or satisfactorily proven) to be the person whose name(s) is/are subscribed to the within instrument, and acknowledged that he/she/they executed the same for the purposes therein contained.

In witness whereof, I hereunto set my hand and official seal.

(Seal)

Commonwealth of Pennsylvania - Notary Seal
Marion Rayman, Notary Public
Westmoreland County
My commission expires September 8, 2022
Commission number 1134823
Member, Pennsylvania Association of Notaries

[signature]
Notary Signature

Notary Public
Title of Officer

My Commission Expires: 9-8-2022

Loan No.: [redacted]

The Money Source Inc.
–Lender

-Date

By: ______________________

Its: Vice President

## LENDER ACKNOWLEDGMENT

State of Arizona §
§
County of Maricopa §

On this, the ______day of __________________, _______ before me________________________, the undersigned officer, personally appeared ______________________________ who acknowledged himself/herself to be the Vice President
_____________________________________ of The Money Source Inc.

a entity, and that he/she as such Vice President
_____________________________________ being authorized to do so, executed the foregoing instrument for the purposes therein contained by signing the name of said entity by himself/herself as Vice President
______________________________.

In witness whereof, I hereunto set my hand and official seal.

(Seal)

Notary Signature

Notary Public
Title of Officer
My Commission Expires: ______________________

**"I, ____________________, do hereby certify that the correct address of the within named Mortgagee is 500 South Broad Street, Suite 100A, Meriden, Connecticut 06450. Witness my hand this ________ day of ______________, ______."**
**Signed:** ______________________________
**By:** ______________________________

Loan No.: [redacted]

**EXHIBIT "B"**
**PRIOR LOAN MODIFICATION AGREEMENT**

The Security Instrument was previously modified by a Loan Modification Agreement dated December 23rd, 2016, recorded on January 21st, 2016, in Liber or Book N/A, Page N/A, Instrument No. 201601210002228, of the Official Records of WESTMORELAND County/Parish, Pennsylvania.

Loan No.: [redacted]

# NOTICE OF NO ORAL AGREEMENTS

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

**Receipt of Notice:** The undersigned hereby represents and warrants that I/we have each received and read a copy of this Notice on or before the execution of the "Loan Agreement." "Loan Agreement" means one or more promises, promissory notes, agreements, undertakings, security agreements, deeds of trust or other documents, or commitments, or any combination of those actions or documents, pursuant to which a financial institution loans or delays repayment of or agrees to loan or delay repayment of money, goods, or any other thing of value or to otherwise extend credit or make a financial accommodation.

11/27/21 [signature]

Date KAREN L. FALENSKI –Borrower

Date –Borrower

Date –Borrower

Date – Borrower

Date – Borrower

Date – Borrower

Loan No. [redacted]

# CORRECTION AGREEMENT

**Borrower(s):** KAREN L. FALENSKI

**Property:** 633 OVERHEAD BRIDGE RD, YOUNGWOOD, Pennsylvania 15697

Words used in this Agreement are defined below. Words in the singular mean and include the plural and vice versa.

**"Borrower"** is KAREN L. FALENSKI.

**"Lender"** is The Money Source Inc.

, and its successors or assigns.

**"Loan"** means the debt evidenced by the Note and all sums due under the Security Instrument.
**"Note"** means the promissory note(s) signed by Borrower in favor of Lender or any assignee of Lender.
**"Security Instrument"** means the Deed of Trust/Mortgage/Security Deed, signed by Borrower in favor of Lender, securing payment of the Note.

AGREEMENT TO CORRECT OR PROVIDE ADDITIONAL DOCUMENTATION OR FEES: In consideration of the Loan Modification Agreement offered by Lender in the amount of $128,297.95 , which modifies the Note and Security Instrument, and regardless of the reason for any loss, misplacement, omission, misstatement or inaccuracy in any Loan documentation, Borrower agrees as follows: If any document is lost, misplaced, omitted, misstated or inaccurately reflects the true and correct terms and conditions of the Loan, upon request of Lender (including any assignee of Lender), Borrower will comply with Lender's request to execute, acknowledge, initial and/or deliver to Lender any documentation Lender deems necessary to replace and/or correct the lost, misplaced, omitted, misstated or inaccurate document(s). All documents Lender requests of Borrower shall be referred to as "Requested Documents." Borrower agrees to deliver the Requested Documents within ten (10) days after receipt by Borrower of a written request for such replacement. Borrower does hereby agree to comply with Lender's request to assure that the Loan documentation executed this date will enable Lender to seek insurance or guaranty from the Department of Housing and Urban Development (HUD) or Department of Veteran's Affairs (VA), if applicable, or to conform with and be acceptable to the Federal National Mortgage Association (FNMA), Federal Home Loan Mortgage Corporation (FHLMC), Government National Mortgage Association (GNMA), or any other investor.

**REQUEST BY LENDER:** Any request under this Agreement may be made by the Lender (including assignees and persons acting on behalf of the Lender) and shall be prima facie evidence of the necessity for same. A written statement addressed to Borrower at the address indicated in the Loan documentation shall be considered conclusive evidence of the necessity for Requested Documents.

**BORROWER LIABILITY:** If Borrower fails or refuses to execute, acknowledge, initial or deliver the Requested Documents to Lender within ten (10) days after being requested to do so by Lender, Borrower understands that Lender is relying on the representations contained herein and agrees to be liable for any and all loss or damage which Lender reasonably sustains thereby including, but not limited to, all reasonable attorneys' fees and costs incurred by Lender.

This Agreement shall inure to the benefit of Lender's successors and assigns and be binding upon the heirs, devises, personal representatives, successors and assigns of Borrower.

ACKNOWLEDGMENT OF RECEIPT

I hereby acknowledge receipt of this Correction Agreement and further acknowledge that I understand its provisions. Words used in this Correction Agreement mean and include the plural and vice versa.

11/27/21
Date

KAREN L. FALENSKI –Borrower

Date

–Borrower

Date

–Borrower

Date

– Borrower

Date

– Borrower

Date

– Borrower

Loan No.: [redacted]

# BANKRUPTCY DISCLOSURE ADDENDUM

THIS BANKRUPTCY DISCLOSURE ADDENDUM ("Addendum") is made this 29th day of October, 2021, and is incorporated into and shall be deemed to amend and supplement the Agreement of the same date, given by the Borrower which modifies Borrower's Note and Security Instrument to Lender, and covers the Property.

In addition to the covenants and agreements made in the Agreement, Borrower and Lender covenant and agree as follows:

1. **Borrower has filed for a Chapter 13 bankruptcy and, Lender's final approval of the Loan Modification Agreement is contingent upon approval of the Agreement by the bankruptcy court, if required.**
2. **AFTER** execution of the Agreement, the bankruptcy court may award the Borrower a Chapter 13 bankruptcy discharge.
3. Borrower understands and acknowledges that Borrower has had an opportunity to consult an attorney of Borrower's own choosing before Borrower executed the Agreement and this Addendum, and Borrower has either consulted with an attorney or has declined the opportunity to consult with an attorney.

Except as otherwise specifically provided in this Addendum, the terms of the Agreement will remain unchanged and in full effect.

KAREN L. FALENSKI -Borrower

-Borrower

-Borrower

-Borrower

Loan No.: [redacted]

The Money Source Inc. ____________________ --Lender

____________________ -Date

By: ____________________

Its: Vice President

# EXHIBIT A

All that certain piece or parcel of ground situate in the Borough of Youngwood, County of Westmoreland and Commonwealth of Pennsylvania, and being more fully bounded and described as follows, to wit:

Beginning at a point in the center of Fourth Street Extension, said point being on the line dividing land now or formerly of Victor P. Regola, Stanford Johnston and Arthur Woodward; thence by said dividing line, North 69° 46' West, 429.95 feet to a point; thence by line dividing land herein conveyed and land now or formerly of Arthur Woodward, North 26° 18' East, 335.24 feet to a point; thence by line dividing land now or formerly of Arthur Krupar and Ed Harrold, South 41° 21' 30" East, 448.59 feet to a point in the center of First Street Extension; thence by same, South 20° 15' West, 119.92 feet to a point, the place of beginning.

Having erected thereon a dwelling house known as 633 North Fourth Street Extension.

Tax/parcel ID 41-01-08-0-101